UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

LG2, LLC, *a Texas limited liability company*,

    Plaintiff,

v.

American Dairy Queen Corporation, *a Delaware corporation*,

    Defendant.

Case No. 22-cv-1044 (WMW/JFD)

**ORDER**

---

Before the Court is Defendant American Dairy Queen Corporation's (ADQ) motion to transfer venue or, in the alternative, to dismiss in part the complaint. (Dkt. 10). For the reasons addressed below, the Court denies ADQ's motion to transfer and grants ADQ's partial motion to dismiss.

**BACKGROUND**

Plaintiff LG2, LLC, (LG2) is a Texas limited liability company owned by Jordan Giles and Terry Giles, who are residents of Texas. Defendant ADQ is a Delaware corporation with its principal place of business in Bloomington, Minnesota.

In March 1961, ADQ entered into an agreement (the Legacy Agreement) with Bob Denny, which granted Denny the exclusive right to use the trademark and name "Dairy Queen" within Johnson County, Oklahoma (the Territory). The Legacy Agreement was assigned several times. On December 1, 2019, the then-current assignee, C & K Cannon Enterprises, LLC, (C & K Cannon), assigned the Legacy Agreement to LG2.

The Dairy Queen franchise (the Restaurant) governed by the Legacy Agreement is located in Tishomingo, Oklahoma. In 1989, the Restaurant burned down and reopened a year later at a different location in Tishomingo. In September 2021, LG2 purchased a property 1.5 miles away from the second location and intended to relocate the Restaurant to the new property beginning in January 2022. ADQ informed LG2 in November 2021 that ADQ would not permit LG2 to open the Restaurant at the new property unless LG2 entered into a new franchise agreement and/or reduced its menu.

LG2 commenced this action on April 25, 2022, advancing three claims to relief. Count I alleges breach of contract and the implied covenant of good faith and fair dealing. Count II alleges a violation of the Minnesota Franchise Act. Count III requests a declaratory judgment. ADQ now moves to transfer this action to the United States District Court for the Eastern District of Texas or, in the alternative, dismiss LG2's claims under the Minnesota Franchise Act (Count II).

## ANALYSIS

### I. Motion to Transfer Venue

ADQ seeks to transfer this case to the Eastern District of Texas, pursuant to 28 U.S.C. § 1404(a). LG2 opposes the motion to transfer, contending that the Eastern District of Texas is an improper venue for this action.

A district court may transfer a civil action to another district where the action may have been brought for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The decision whether to transfer under Section 1404(a) involves a two-step inquiry. *Valspar Corp. v. Kronos Worldwide, Inc.*, 50 F. Supp. 3d

1152, 1155 (D. Minn. 2014).  First, the court must determine "whether the action might have been brought in the proposed transferee district." *Id.* (internal quotation marks omitted).  Second, the court must determine whether transfer would be convenient for the parties, convenient for the witnesses and in the interests of justice.  *Id.*

A defendant seeking transfer bears a "heavy burden" of proof to establish that transfer is warranted.  *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 884 (D. Minn. 2015) (internal quotation marks omitted).  This burden requires the defendant to show "that the balance of factors strongly favors" the defendant, not merely "that the factors are evenly balanced or weigh only slightly in favor of transfer."  *Id.* (internal quotation marks omitted).  A court may consider matters beyond the pleadings when determining whether venue is proper.  *See e.g.*, *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, No. 09-720(RHK/JJG), 2009 WL 1684428, at *2 (D. Minn. June 16, 2009).

LG2 first argues that ADQ's proposed transferee district, the Eastern District of Texas, is an improper venue for this action.  ADQ maintains that venue is proper in the Eastern District of Texas.  In light of the Court's conclusion that transfer to the Eastern District of Texas is not warranted, *infra*, the Court assumes without deciding that this action could have been properly venued in Texas and considers the remaining Section 1404(a) factors.

      A.    **Convenience of the Parties**

ADQ argues that transfer to the Eastern District of Texas would be more convenient for the parties.  There is a strong presumption in favor of a plaintiff's choice

3

of forum, particularly when the plaintiff resides in the district in which it filed the complaint. *Travel Tags, Inc. v. Performance Printing Corp.*, 636 F. Supp. 2d 833, 836 (D. Minn. 2007). A defendant can overcome this presumption by showing that the transferee district is *more* convenient than the current forum. *See id.* A defendant's motion to transfer should not be granted "if the effect is simply to shift the inconvenience to the party resisting the transfer." *Id.* (internal quotation marks omitted).

Here, ADQ maintains that because LG2's two owners live in Texas and have no connection to Minnesota, the Eastern District of Texas would be more convenient for LG2. ADQ also argues that, although ADQ is headquartered in Minnesota, the ADQ employees with information relevant to the case live in Texas. Because LG2 is not a resident of the District of Minnesota, the presumption in favor of its preferred venue is lessened. *See In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (observing that the "general practice of according deference [to the plaintiff's choice of forum] . . . is based on an assumption that the plaintiff's choice will be a convenient one" and that such an assumption is "much less reasonable" if the plaintiff is not a resident of the chosen district and there is a risk that "the plaintiff chose the forum to take advantage of favorable law or to harass the defendant" (internal quotation marks omitted)). LG2 argues that the ADQ employees who were involved with the transfer of the Restaurant work in ADQ's Minnesota headquarters and, therefore, that the convenience of the parties weighs in favor of Minnesota. Of the four relevant ADQ employees the parties have identified, two live in Minnesota and two live in Texas. And LG2 is a Texas

company whose owners reside in Texas. For these reasons, the convenience-of-the-parties factor weighs in favor of transfer to the Eastern District of Texas.

> B. **Convenience of the Witnesses**

ADQ next contends that transferring this action to the Eastern District of Texas would increase the convenience of the witnesses. A defendant seeking transfer "must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1122 (D. Minn. 1999). After such a showing, the district court can evaluate the materiality of the anticipated witnesses' testimony and the accessibility of the forum. *Bae Sys.*, 124 F. Supp. 3d at 885–86 (clarifying that this inquiry focuses primarily on non-party witnesses because "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum"). When a defendant makes only general allegations of witness inconvenience or establishes that a forum is only slightly inconvenient, a district court should not transfer the action. *See id.* at 887–88.

Here, each party identifies a non-party witness for whom their desired forum would be more convenient. According to ADQ, Scott Lay is a non-party witness for whom Texas would be more convenient. Lay previously held a one-third ownership interest in LG2 and was involved in the construction of the new Restaurant. ADQ anticipates that Lay will offer testimony regarding LG2's Oklahoma ADQ franchise operations, the differences between operating an ADQ franchise in Oklahoma and Texas and LG2's construction of the new Restaurant. Lay resides outside the subpoena power

of the District of Minnesota. *See* Fed. R. Civ. P. 45(c)(1) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person"). LG2 provides a declaration from Lay, in which Lay attests that although he resides in Texas, he is "willing, able, and committed to voluntarily traveling to Minnesota" to testify in this action. But LG2 does not dispute that Texas would be a more convenient forum for Lay than Minnesota.

LG2 contends that former ADQ employee Nancy Kain is an essential non-party witness who resides beyond the subpoena power of the Eastern District of Texas. According to LG2, Kain was LG2's assigned transfer coordinator at ADQ and would testify as to the transfer process that led to LG2's acquisition of the Restaurant and ADQ's procedures pertaining to store transfers. ADQ argues that Kain is not an essential witness because current ADQ employees can provide the same information. But Kain, as LG2's assigned coordinator, may have information particular to the transfer of the Restaurant to LG2 that a current employee might not be able to provide.[1] For this reason, Kain's testimony may be material.

Because both parties to this dispute identify a nonparty witness they deem essential who resides outside the subpoena power of the other party's desired venue, the convenience-of-the-witnesses factor is neutral.

---

[1] ADQ contends that Kain's testimony is irrelevant because she was not involved in coordinating the relocation policy at issue in this action. Although Kain's testimony would not be relevant to the relocation dispute, her testimony could be material to LG2's claims regarding ADQ's alleged failure to provide a Franchise Disclosure Document when ownership of the Restaurant transferred from C & K Cannon to LG2.

### C. Interests of Justice

When determining whether the interests of justice favor transfer, district courts consider "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine local law." *Bae Sys.*, 124 F. Supp. 3d at 888 (internal quotation marks omitted).

#### 1. Judicial Economy

Judicial-economy considerations encompass the Court's case load as well as other litigation activity between the parties. *Valspar*, 50 F. Supp. 3d 1152, 1157 (D. Minn. 2014). Here, the parties do not identify any reason why judicial economy favors litigation in this District or in the Eastern District of Texas. This factor is neutral.

#### 2. Plaintiff's Choice of Forum

A plaintiff's choice of forum is generally accorded deference. *In re Apple, Inc.*, 602 F.3d at 913. But as addressed above, when a plaintiff commences an action in a district in which the plaintiff does not reside, the plaintiff's choice of forum is entitled to less deference. *See id.* In particular, a plaintiff's decision to commence litigation in a foreign forum increases "the risk that the plaintiff chose the forum to take advantage of favorable law or to harass the defendant." *Id.* Here, LG2 does not reside in Minnesota and, therefore, its decision to bring suit in the District of Minnesota is entitled to less weight. But this case is not completely analogous to *Apple*, in which "no relevant connection" existed between the plaintiff, defendant, witnesses, dispute, and the

plaintiff's choice of forum. *See id.* ADQ is a Minnesota company and LG2 has identified several witnesses who reside in Minnesota. Although LG2's choice to bring this action in the District of Minnesota is not entitled to the same deference it would be were LG2 a Minnesota resident, its choice nonetheless merits some deference. For this reason, the choice-of-forum factor weighs slightly against transfer.

### 3. Comparative Costs to the Parties of Litigating in Each Forum

When comparing the costs to each party, courts consider the relative costs of discovery, obtaining local counsel and other litigation-related expenses. *See Valspar Corp.*, 50 F. Supp. 3d at 1157. *But see My Pillow, Inc. v. LMP Worldwide, Inc.*, 331 F. Supp. 3d 920, 928 (D. Minn. 2018) (giving little weight to the costs of document production due to advancements in technology). When a transfer would merely shift the costs from one party to another, courts disfavor the transfer. *See Bae Sys.*, 124 F. Supp. 3d at 888. Here, both parties have obtained Minnesota counsel. And as LG2 observes, because ADQ has employees in Texas and Minnesota, ADQ will incur travel costs regardless of the forum. Because transfer would merely shift the costs from one party to another, the comparative-costs factor weighs against transfer.

### 4. LG2's Ability to Enforce a Judgment

The parties do not dispute that LG2 will be able to enforce a judgment in either forum. *See Ahlstrom v. Clarent Corp.*, No. 02-780RHKSRN, 2002 WL 31856386, at *7 (D. Minn. Dec. 19, 2002) ("A plaintiff who obtains a money judgment from a federal district court may register that judgment in any other judicial district in which assets of the defendant are located." (citing 28 U.S.C. § 1963)). This factor is neutral.

### 5. Obstacles to a Fair Trial and Advantages of Having a Local Court Determine Questions of Local Law

LG2 argues that it is more likely to obtain a fair trial in this District than in the Eastern District of Texas because this case presents an unresolved question of Minnesota law, which the District of Minnesota is better equipped to resolve. ADQ contends that LG2 could obtain a fair trial in the Eastern District of Texas and that the Eastern District of Texas is equally capable of applying Minnesota law.

Federal district courts routinely apply laws from other states. *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 957 (D. Minn. 2014). But it is generally preferable for local courts to consider local issues of law. *Brockman v. Sun Valley Resorts, Inc.*, 923 F. Supp. 1176, 1183 (D. Minn. 1996). The application of local law is particularly important when the legal questions at issue are novel. *Id.* at 1182–83. Here, LG2 argues that its arguments under the Minnesota Franchise Act (MFA) are novel and have "recently been developed by courts in this district, applying Minnesota law." LG2 argues that the Eastern District of Texas "would not have the benefit of this recent development." ADQ contends that the Eastern District of Texas also has an interest in resolving the claim under the MFA because LG2's claims implicate the extraterritorial application of a state's laws, which is an issue that is equally important to Texas.

Because federal district courts routinely apply laws from other states, the Eastern District of Texas would be able to apply the MFA and provide LG2 a fair trial. Accordingly, the fair-trial-obstacles factor is neutral. But because there is a preference

for allowing local courts to consider local issues of law, the local-application-of-local law factor weighs against transfer.

### 6. Conflict of Law

Neither party identifies any choice-of-law issues relevant to this dispute.[2] Accordingly, this factor is neutral.

In summary, the convenience-of-the-parties factor weighs in favor of transfer to the Eastern District of Texas. Several of the interests-of-justice factors, including the plaintiff's choice of forum, the comparative costs to the parties and the advantage of having a local court apply local law, weigh against transfer. The remaining factors—convenience of the parties, judicial economy, the ability to enforce a judgment and obstacles to a fair trial—are neutral. Because most of the factors weigh against transfer or are neutral, ADQ has not satisfied its burden to establish that transfer to the Eastern District of Texas is warranted.

The Court, therefore, denies ADQ's motion to transfer venue to the Eastern District of Texas.

### II. Motion to Dismiss

ADQ moves to dismiss LG2's claims under the Minnesota Franchise Act (MFA) for failure to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader

---

[2] LG2 argues that the conflicts-of-law factor weighs against transfer because this District is better suited to apply Minnesota law. But this argument pertains to the desirability of having a local court apply local law, *see supra*, Part I.D.5, not to whether there are conflict-of-law issues.

is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not *prove* his case at the pleading stage, nor do the pleadings require detailed factual allegations to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *L.L. Nelson Enters., Inc. v. County of St. Louis*, 673 F.3d 799, 805 (8th Cir. 2012) (observing that "specific facts are not necessary" and pleadings "need only give the [opposing party] fair notice of what the claim is and the grounds upon which it rests" (internal quotation marks omitted)). To survive a motion to dismiss, a complaint must allege sufficient facts to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). Factual allegations that raise only a speculative right to relief are insufficient. *Twombly*, 550 U.S. at 555. A district court accepts as true all of the plaintiff's factual allegations and views them in the light most favorable to the plaintiff. *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). But legal conclusions couched as factual allegations are not accepted as true. *Twombly*, 550 U.S. at 555. And mere "labels and conclusions" as well as a "formulaic recitation of the elements of a cause of action" fail to state a claim for relief. *Id.*

### A. The Applicability of the MFA

As an initial matter, ADQ argues that the MFA does not govern ADQ's relationship with LG2 because the MFA protects only franchisees located in Minnesota. Courts disagree as to the application of the MFA to franchisees outside of Minnesota. *See Wave Form Sys., Inc. v. AMS Sales Corp.*, 73 F. Supp. 3d 1052, 1061 (D. Minn. 2014) (listing cases and concluding that the applicability of the MFA to franchisees located outside of Minnesota was "uncertain"); *Johnson Bros. Liquor Co. v. Bacardi U.S.A., Inc.*,

830 F. Supp. 2d 697, 703 (D. Minn. 2011) (observing that "even where a party to a franchise agreement is a Minnesota corporation, the agreement is not within the purview of the MFA if the franchisee is not located in and does not operate in Minnesota" (internal quotation marks omitted)).  Here, LG2 alleges that the MFA applies "because the sale of and/or offer to sell or purchase the franchise was made in the state of Minnesota."

The MFA provides that its provisions "concerning sales and offers to sell shall apply when a sale or offer to sell is made in this state; when an offer to purchase is made and accepted in this state; or when the franchise is to be located in this state." Minn. Stat. § 80C.19, subdiv. 1.  "[A]n offer to sell or to purchase is made in this state, whether or not either party is then present in this state, when the offer originates from this state or is directed by the offeror to this state and received by the offeree in this state." *Id.* § 80C.19, subdiv. 2.  The MFA defines the words "sale" and "sell" to include "every contract or agreement for the sale of, and every contract to sell or dispose of, a franchise or interest in a franchise for value." *Id.* § 80C.01. subdiv. 15.  The MFA defines "offer" and "offer to sell" to include "every attempt to offer to dispose of, and every solicitation of an offer to buy, a franchise or interest in a franchise for value." *Id.* § 80C.01, subdiv. 16.

LG2 relies on the Assignment, Guaranty, and Consent Agreement (the Assignment Agreement) between LG2 and C & K Cannon in support of its allegation that an offer to sell or purchase a franchise was made in Minnesota.  LG2 alleges that the Assignment Agreement was drafted by ADQ in Minnesota, only became effective once ADQ signed it in Minnesota and "contemplated a relationship involving continuous communication

and payments between LG2 and ADQ in Minnesota." According to LG2, ADQ also accepted the assignment from ADQ's offices in Minnesota and communicated its acceptance of the assignment from LG2 from its offices in Minnesota. But LG2 offers no support for its contention that, as a matter of law, any of these actions constituted "a sale or offer to sell"[3] under the MFA. Instead, these actions pertained to ADQ's right to approve the assignment from C & K Cannon to LG2. The cases on which LG2 relies concern a franchisor dealing directly with a franchisee and, therefore, do not support LG2's argument that a franchisor's consent to a franchise assignment constitutes a sale or an offer to sell a franchise.

Reading the MFA in context bolsters the Court's conclusion that a franchisor's consent to an assignment of a franchise does not constitute a sale or an offer to sell. The MFA exempts from its registration requirements an "offer or sale of a franchise owned by that franchisee . . . if the sale is not effected by and through a franchisor." Minn. Stat. § 80C.03(a). And the MFA clarifies that a "sale is not effected by or through a franchisor merely because a franchisor has a right to approve or disapprove a different franchisee." *Id.* Because this provision relates to exemptions from the MFA's registration agreements,

---

[3] LG2 provides as an exhibit to its opposition to ADQ's motion a copy of ADQ's System Standards and Operations Manual (the Manual). Although the Court generally cannot consider matters outside the pleadings on a motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) "Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Id.* (internal quotation marks omitted). Because LG2 does not allege the contents of the Manual in its complaint, the Manual is not necessarily embraced by the complaint and cannot be considered by the Court.

the Court need not address whether this exemption, on its own, is sufficient to preclude the applicability of the MFA to the claims in this action. But when read in context, Section 80C.03(a) supports the Court's conclusion that consent to assign a franchise is insufficient to constitute a sale or offer to sell for the purposes of Section 80C.19.

Because the MFA does not apply to LG2s claims in this action, the Court grants ADQ's motion to dismiss LG2's claims under the MFA (Count II).

### III.     Motion to Stay Deadline to Answer

ADQ requests that the Court stay ADQ's deadline to answer the remaining allegations in the complaint pending the disposition of this motion. LG2 argues that the granting ADQ's request will delay the progress of the case. Federal Rule of Civil Procedure 12(a)(1)(A)(i) requires that a defendant serve an answer within 21 days after being served with the summons and complaint. If a defendant files a motion to dismiss pursuant to Rule 12, Fed. R. Civ. P., the defendant must serve an answer within 14 days after the Court denies the motion to dismiss. Fed. R. Civ. P. 12(a)(4)(A). ADQ moves to dismiss only one count of LG2's complaint. Although the Federal Rules of Civil Procedure do not expressly contemplate partial motions to dismiss or partial answers, courts have granted requests to stay the deadline to answer the remaining allegations in the complaint to avoid "piecemeal partial answers." *Corning Inc. v. Wilson Wolf Mfg. Corp.*, 492 F. Supp. 3d 840, 864 (D. Minn. 2020); *accord Speed RMG Partners, LLC v. Arctic Cat Sales Inc*, No. 20-CV-609 (NEB/LIB), 2021 WL 5087273, at *9 (D. Minn. Mar. 5, 2021) (granting the defendant 14 days after the issuance of the order to answer and observing that the United States Court of Appeals for the Eighth Circuit has not

14

addressed whether Rule 12(a)(4)(A), Fed. R. Civ. P., applies to partial motions to dismiss). Here, requiring ADQ to answer before the resolution of its motion to dismiss would result in piecemeal litigation and disserve judicial efficiency. For these reasons, the Court grants ADQ's request for a stay of its deadline to answer the remaining claims in LG2's complaint.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1. Defendant American Dairy Queen Corporation's motion to transfer, (Dkt. 10), is **DENIED**.

2. Defendant American Dairy Queen Corporation's motion to dismiss Count II of the complaint, (Dkt. 10), is **GRANTED**.

3. Defendant American Dairy Queen Corporation must answer Plaintiff LG2, LLC's complaint within 14 days of the date of this Order.

Dated: January 12, 2023                                s/Wilhelmina M. Wright
                                                       Wilhelmina M. Wright
                                                       United States District Judge